IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MARK D. FOUST                                                              PLAINTIFF

v.                                    NO. 1:14-cv-00017 JTR

CAROLYN W. COLVIN, Acting Commissioner                                     DEFENDANT
of the Social Security Administration

MEMORANDUM OPINION AND ORDER

Plaintiff, Mark D. Foust ("Foust"), appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have filed Appeal Briefs (docs. 13 and 14), and the issues are now joined and ready for disposition.

Foust maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Foust bases this argument on the findings and conclusions of Dr. Meraj Siddiqui, M.D., ("Siddiqui") and Dr. Anandaraj Subramanium, M.D., ("Subramanium"), which he contends the ALJ improperly discounted. As a result, Foust

---

[1] Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

contends no medical evidence supports the ALJ's assessment of his residual functional capacity.

The record reflects that Siddiqui saw Foust on multiple occasions, between July of 2010 and June of 2012, for his complaints of back and leg pain. See Transcript at 254-257 (07/22/2010), 242-244 (08/18/2010), 288-293 (09/20/2010), 306-310 (10/11/2010), 235-236 (11/01/2010), 233-234 (12/09/2010), 231-232 (02/17/2011), 352-357 (03/01/2011), 362-366 (03/22/2011), 375-379 (04/19/2011), 409-413 (05/10/2011), 403-404 (06/16/2011), 397-398 (08/15/2011), 391-392 (10/13/2011), 418-419 (12/13/2011), 439-441 (02/09/2012), 428-432 (05/15/2012), 423-426 (06/05/2012). Siddiqui repeatedly assessed post-laminectomy syndrome, thoracic and lumbosacral spondylolysis, and chronic back pain. Siddiqui's progress notes reflect that Foust's pain improved when he took medication, including hydrocodone, and when he received steroid injections and underwent nerve blocking procedures. However, his progress notes also reflect that Foust's pain typically returned after a period of time.

In August of 2012, Siddiqui completed a letter/checklist in support of Foust's claim for benefits. See Transcript at 445. In the letter/checklist, Siddiqui stated that Foust's back pain markedly interfered with his activities of daily living, prevented him from sitting or standing for more than twenty minutes at a time, and required him to shift positions and lie down intermittently throughout the day. Siddiqui based these findings on a magnetic resonance imaging test performed on Foust's thoracic spine in February of 2012, the results of which showed, in part, disc protrusion in his "central/right central

region T7-8, abutting the ventral aspect of the thoracic spinal cord but not causing any significant spinal canal narrowing or cord compression." See Transcript at 436.

The ALJ acknowledged Siddiqui's findings and conclusions in assessing Foust's residual functional capacity and construed them as follows:

> Based on the evidence in this claim in its entirety, the undersigned has concluded that while the claimant has exhibited a history of lumbar and thoracic pain with radicular symptoms throughout the course of the alleged period of disability, symptoms have been amenable to significant improvement and ultimately stabilization with medical treatment. As shown by the evidence, Mr. Foust has consistently reported significant improvement in the level of pain symptoms, with reports … primarily of only moderate pain confirmed amenable to management with a combinations of medications and injections or other conservative pain management measures.
>
> There is no evidence showing any requirement for surgery, nor does the evidence show the discussion of surgery as a necessary treatment measure. Additionally, throughout the course of the claimant's ongoing follow-up with … Siddiqui, the physician has consistently recommended that the claimant should avoid bed rest and to maintain normal activities. Notably, the most recent evidence shows no complaints by claimant of lumbar pain symptoms since completion of a series of pain injections and bilateral neurotomies. Further, the claimant reported the onset [of] thoracic pain symptoms only as recently as February [of] 2012.

See Transcript at 20. With specific regard to Siddiqui's letter/checklist, the ALJ declined to assign it "more than limited evidentiary weight." See Transcript at 21. The ALJ did so for the following reasons: "there is no evidence from which to conclude complaints by the claimant of thoracic pain symptoms prior to February [of] 2012 nor is there objective medical evidence showing a diagnosis of thoracic disc protrusion at any time prior to

February [of] 2012." See Transcript at 21. In short, the ALJ concluded that the letter/checklist "doesn't really tell us much." See Transcript at 21.

The record reflects that Subramanium saw Foust in January of 2011 for a consultative physical examination. See Transcript at 189-193. Subramanium assessed chronic lumbar radiculopathy and concluded that Foust has a "moderate to severe" limitation in his ability to walk, stand, sit, lift, and carry. See Transcript at 193.

The ALJ acknowledged Subramanium's findings and conclusions in assessing Foust's residual functional capacity but only assigned them "limited evidentiary weight." See Transcript at 22. The ALJ did so for the following reasons:

> ... [Subramanium] provided these findings and conclusions early (January 27, 2011) in the claimant's treatment process and within approximately six months of the alleged disability onset. The evidence as a whole supports a conclusion that continued medical treatment received by the claimant after January [of] 2011 has resulted in significant levels of improvement in pain and overall functional capacities.

See Transcript at 22.

In March of 2011, Dr. Bill Payne, M.D. ("Payne") *reviewed* Foust's medical records. See Transcript at 217-224. Payne concluded on the basis of his review that Foust has sufficient residual functional capacity to perform light work, a conclusion later affirmed by Dr. Sharon Keith, M.D. ("Keith"), another *reviewing* physician. See Transcript at 250.

The ALJ acknowledged Payne and Keith's conclusions in assessing Foust's residual functional capacity and assigned the conclusions "significant evidentiary weight." See

Transcript at 20. The ALJ did so because the physicians provided detailed explanations for their conclusions, which he found to be consistent with the record as a whole.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

The ALJ assessed Foust's residual functional capacity and found that he is capable of performing light, semi-skilled work.[2] The question for the Court is whether substantial evidence on the record as a whole supports that finding. Although Foust bears the burden of proving his residual functional capacity, which is admittedly an administrative determination reserved for the ALJ, see Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007), there must be some medical evidence to support the ALJ's finding. On the record now before

---

[2] Specifically, the ALJ found the following:

> … Due to orthopaedic issues, [Foust] would be limited to lifting-carrying up to a maximum of 20 pounds occasionally and 10 pounds frequently. He has the ability to stand and/or walk a total of no more than six (6) hours in an eight-hour workday. He would have the ability to sit for up to six (6) hours in an eight-hour workday and operate hand/foot controls for pushing-pulling within established lifting-carrying restrictions. He would be limited to only occasional stooping or bending and he should avoid crouching. [Foust's] nonexertional[] pain symptoms would affect the ability to maintain mental focus and concentration to the extent that he would be limited to work where interpersonal contact is routine but superficial and the complexity of the tasks are learned by experience with several variables. He would have the ability to use individual judgment within limits and any supervision required would be little for routine job tasks but detailed for non-routine tasks. [Footnote omitted].

See Transcript at 14.

the Court, it cannot be said that the assessment of Foust's residual functional capacity is supported by some medical evidence.

First, although a treating physician's opinion can be discounted, see Choate v. Barnhart, 457 F.3d 865 (8th Cir. 2006), the ALJ must give good reasons for doing so. In this instance, the reasons the ALJ gave for declining to assign Siddiqui's letter/checklist more than limited evidentiary weight are suspect. The ALJ discounted the letter/checklist, in part, because Foust did not complain of thoracic pain prior to February of 2012. Although it is true that Foust complained primarily of pain in his lower back, Siddiqui's progress notes reflect that Foust complained of pain in his "mid back" as early as July 22, 2010, see Transcript at 254, and Siddiqui diagnosed, inter alia, thoracic disc displacement and thoracic spine pain at that time. The ALJ also discounted the letter/checklist because there is no evidence showing "a diagnosis of thoracic disc protrusion at any time prior to February [of] 2012." See Transcript at 21. The ALJ is correct in so noting, but the testing done prior to February of 2012 was primarily of Foust's lumbar region and not of his thoracic region. See Transcript at 187-188.

Second, the reasons the ALJ gave for assigning only limited evidentiary weight to Subramanium's findings and conclusions are also suspect. The ALJ discounted the findings and conclusions, in part, because they were offered in January of 2011, or early in Foust's treatment and within approximately six months of his alleged onset date. The same reason, though, is equally applicable to Payne's conclusion that Foust can perform light work, a conclusion the ALJ gave "significant evidentiary weight." See Transcript at

20. Payne, a reviewing physician, offered his conclusion in March of 2011, or two months after Subramanium's findings and conclusions but still early in Foust's treatment and within approximately eight months of his alleged onset date. The ALJ also discounted Subramanium's findings and conclusions because the continued medical treatment Foust received, after January of 2011, resulted in "significant levels of improvement in pain and overall functional capacities." See Transcript at 22. The ALJ failed, though, to offer any support for his conclusion, and the record is inconclusive as to whether Foust showed significant levels of improvement after January of 2011. Siddiqui's progress notes for the period from February of 2011 through July of 2012 reflect that Foust's pain was manageable at times with medication and treatment, see Transcript at 362, 375, 391, 397, 403, 418, 423, but was not manageable at other times, see Transcript at 231, 352, 409, 428, 439.

Third, assuming the ALJ's reasons for discounting Siddiqui's letter/checklist and Subramanium's findings and conclusions are not suspect, there is little medical evidence to support the ALJ's assessment of Foust's residual functional capacity. The ALJ made the assessment solely upon his interpretation of Siddiqui's progress notes and the conclusions of the state agency *reviewing physicians*. With respect to the former, it appears that the ALJ impermissibly drew his own inferences about the severity of Foust's pain from the progress notes. See Shontos v. Barnhart, 328 F.3d 418 (8th Cir. 2003) (ALJ cannot draw own inferences from records). Moreover, the ALJ's interpretation of the progress notes is questionable. For instance, he noted that Foust's pain improved with

medications, injections, or "other conservative pain management measures." See Transcript at 20. The Court is not convinced that hydrocodone, steroid injections, and nerve blocking procedures are "conservative pain management measures."

With respect to the conclusions of the state agency *reviewing physicians*, their conclusions may be entitled to some weight, but the Court is not persuaded that their conclusions are entitled to the "significant evidentiary weight" the ALJ gave them. See Transcript at 20. He represented that the physicians provided "detailed explanations and bases for their decisions," see Transcript at 20, but Payne's explanation and bases for his conclusion were minimal, see Transcript at 224, and Keith offered no explanation or bases for affirming Payne's conclusion, see Transcript at 250. It is also not clear how their conclusions are "consistent with the record as a whole," see Transcript at 20, as the ALJ found.

It is for the foregoing reasons that substantial evidence on the record as a whole does not support the ALJ's assessment of Foust's residual functional capacity. A remand is therefore necessary. Upon remand, the ALJ shall re-assess Foust's residual functional capacity. As a part of doing so, the ALJ shall re-evaluate the medical evidence and, if necessary, send Foust for another consultative examination.

The Commissioner's decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Foust.

IT IS SO ORDERED this 28th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE